UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWN MARIE COLLATO,

                    Plaintiff,

                                              DECISION & ORDER
        v.                                    15-CV-6194

CAROLYN W. COLVIN,

                    Defendant.
_____

### Preliminary Statement

Plaintiff Dawn Marie Collalto ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income. See Complaint (Docket # 1). Presently before the Court are the parties' competing motions for judgment on the pleadings. (Docket ## 9, 13).

### Factual Background

On July 25, 2011, plaintiff applied for supplemental security income, alleging a disability onset date of April 1, 2000. Administrative Record ("AR") at 146-62. The Social Security Administration issued a Notice of Disapproved Claim on February 9, 2012. AR at 93-95. Plaintiff then timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). AR at 105-06.

On April 12, 2013, ALJ Connor O'Brien conducted a hearing, at which plaintiff appeared with counsel. AR at 30-76. On September 3, 2013, the ALJ issued a decision, therein determining that plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. AR at 15-25. Plaintiff filed a request for review of the ALJ's decision by the Appeals Council on October 4, 2013. AR at 11. For the Appeals Council's consideration, plaintiff also submitted additional medical evidence obtained after the ALJ's decision, spanning from November 19, 2013 to September 26, 2014. AR at 2. On February 5, 2015, the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. AR at 1-4. This federal lawsuit followed.

The sole issue presented before this Court is plaintiff's claim of error for the Appeals Council to refuse to consider "new and material evidence" submitted by plaintiff after the ALJ's decision was rendered. On February 3, 2015, counsel for plaintiff submitted treatment records to the Appeals Council, records that post-dated the ALJ's September 2013 decision. See AR at 420-52. The new evidence indicates that, starting on November 19, 2013, plaintiff began receiving treatment from Dr. Benedetto Tarantino, M.D., for her lower back pain, right knee pain, anxiety, and asthma. AR at 421-24. At her initial appointment, Dr. Tarantino completed a "Physical Assessment" form for the Monroe County Department of Human

2

Services to determine plaintiff's employability, remarking that she was able to work for fifteen hours per week with reasonable accommodations. AR at 421. He further opined that plaintiff was permanently disabled due to her pain and anxiety, and remarked that she had abnormalities walking, squatting, and breathing, and abnormalities in her extremities, hands, and general musculoskeletal system. AR at 422-24. Accordingly, Dr. Tarantino determined that she would be very limited – meaning limited to one to two hours in an eight-hour work day – in her ability to walk, stand, sit, push, pull, bend, lift, and carry.[1] AR at 424.

On December 16, 2013, plaintiff saw Dr. Tarantino again and complained of constant lower back pain and severe right knee pain that prevented her from walking and completing light house work. AR at 436. On examination, she displayed tenderness in both areas. AR at 437. Dr. Tarantino noted that plaintiff's anxiety limited her ability to function. Id. Plaintiff returned on January 24, 2014, complaining of continued anxiety and lower back pain. AR at 439. Dr. Tarantino found her impairments to be unchanged. AR at 440. Plaintiff returned again on April 4, 2014, and reported anxiety,

---

[1] Two additional "Physical Assessment" forms were completed and signed by Dr. Tarantino. AR at 425-32. Although all the forms were completed months apart from each other, with the exception of blood pressure, weight, and pulse readings, the information contained on each form, including the words used to describe plaintiff's current medical condition, are virtually identical. Id.

chronic lower back and knee pain, and incontinence. AR at 442. On July 18, 2014, she reported the same problems to Dr. Tarantino, but additionally noted that she felt "significant pain" in the knuckles of her right hand and "significant left shoulder pain" accompanied by restricted movement. AR at 445. Dr. Tarantino remarked that her shoulder pain was indicative of a frozen shoulder, and that her hand pain was likely arthritis. AR at 446. He instructed her to have x-rays taken and use heat and ice to treat the pain. AR at 447.

Based on the x-rays, Dr. Tarantino determined that plaintiff possibly had a rotator cuff impairment, but no arthritis in her shoulder. AR at 449. The x-ray of her hand also appeared normal. Id. Accordingly, he recommended that she begin physical therapy for her shoulder. Id. On October 15, 2014, plaintiff informed Dr. Tarantino that she was still in pain and had not begun physical therapy. AR at 450. Treatment notes indicate that she had severe tenderness and a markedly decreased range of motion in her lower back and left shoulder. AR at 451. Dr. Tarantino encouraged plaintiff to begin physical therapy and consider mental health treatment for her anxiety. Id.

## Discussion

As indicated above, plaintiff argues that remand is warranted because the Appeals Council did not properly review the evidence she

4

submitted after the ALJ rendered his decision.  See Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (Docket # 9-1) at 1, 12-17.  Plaintiff's argument is two-fold.  She contends that: (1) the Appeals Council improperly found the new evidence to be irrelevant, see id. at 12-13; and (2) the new evidence contains treating source opinions and the Appeals Council failed to provide good reasons for its decision to reject those opinions in violation of the Second Circuit's treating physician rule.  Id. at 14-15; see also Plaintiff's Reply/Response (Docket # 14) at 1-3.  The Commissioner objects to both contentions, arguing that the new evidence neither pertains to the relevant time period nor contains treating source opinions.  See Memorandum in Support of the Commissioner's Motion for Judgment on the Pleadings (Docket # 13-1) at 18-27.  Additionally, the Commissioner asserts that the new evidence fails to prove that plaintiff's condition was worse than the ALJ contemplated.  Id. at 23.

In light of the issue raised by plaintiff, the Court's sole task here is to determine whether the Appeals Council was correct in concluding that the new evidence is immaterial because it "is about a later time" and "does not affect the decision about whether [plaintiff was] disabled beginning on or before [the date the ALJ issued his decision]."  AR at 2.  If the Court agrees with the Appeals Council, then the decision should be affirmed.  See Collins v. Comm'r

of Soc. Sec., 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) ("While
documents generated after the ALJ's decision may bear upon the
severity and continuity of impairments existing during the relevant
period, if the new evidence concerns only the claimant's condition
after the relevant time period, a remand for consideration of this
evidence is not appropriate." (internal quotations and citations
omitted)). If the Court disagrees, then remand is required because
the Appeals Council failed to consider the new and material evidence
that relates back to the relevant time period pursuant to the
regulations. See Pollard v. Halter, 377 F.3d 183, 193-94 (2d Cir.
2004) (remanding where district court failed to consider evidence
that post-dated the ALJ's decision but was nevertheless new and
probative under the regulations).

    The Social Security regulations provide clear guidelines on how
to evaluate evidence submitted to the Appeals Council for the first
time. A claimant may submit evidence to the Appeals Council in support
of their request for review so long as it is new and material. See
20 C.F.R. §§ 416.1470(b); 416.1476(b)(1). "Evidence is 'new' when
it has not been considered previously in the administrative process."
Pferrer-Tuttle v. Colvin, 2015 WL 5773524, at *5 (W.D.N.Y. Sept. 30,
2015) (internal citations omitted). New evidence is material, and
thus must be considered by the Appeals Council, if "it relates back
to the period on or before the date of the [ALJ's] hearing decision."

6

20 C.F.R. § 416.1470(b); see generally Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). New evidence may relate back to the relevant period "even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff." Hightower v. Colvin, 2013 WL 3784155, at *3 (W.D.N.Y. July 18, 2013) (citing Brown v. Apfel, 174 F.3d 59, 64-65 (2d Cir. 1999)); see also Pferrer-Tuttle v. Colvin, 2015 WL 5773524, at *5 ("New evidence is 'material' where it is both relevant to the plaintiff's condition during the relevant time period, and probative." (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004))). Thus, if the new evidence relates back to the relevant period and is probative, the Appeals Council is required to "evaluate the entire record including any new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470.

However, if the Appeals Council declines the claimant's request to review the ALJ's decision after evaluating the entire record and the newly submitted evidence, the ALJ's decision becomes the final decision of the Commissioner and "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez 77 F.3d at 45 (internal quotations and citations omitted). The new evidence becomes part of the

administrative record, and the reviewing court must determine whether the Appeals Council operated within the bounds of the regulations. See id. ("[T]he new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."); see also Ahearn v. Astrue, 2010 WL 653712, at *4 (N.D.N.Y. Feb. 22, 2010) ("The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations." (citing Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y. 2000))).

Here, the evidence is undeniably new: it concerns plaintiff's treatment with Dr. Tarantino, which started roughly two and a half months after the ALJ rendered his decision.[2] Additionally, neither party disputes that plaintiff received treatment from Dr. Tarantino for the same or similar impairments for which she received treatment during the relevant time period. Instead, their primary dispute focuses on the content of Dr. Tarantino's medical opinions.

Plaintiff asserts that Dr. Tarantino's notes indicate that her impairments were "substantially more severe than [were] previously diagnosed," making them relevant to her pre-hearing condition. See Memorandum in Support of Plaintiff's Motion for Judgment on the

---

[2] The ALJ rendered his decision on September 3, 2013 and plaintiff's treatment with Dr. Tarantino began on November 19, 2013. AR at 15-25, 435.

8

Pleadings (Docket # 9-1) at 15-16 (citing Barimah v. Comm'r of Soc. Sec., 2004 WL 2216497, at *3 (E.D.N.Y. Sept. 27, 2004) and Pearl v. Astrue, 2009 WL 10212733, at *9 (N.D.N.Y. Sept. 3, 2009)). Because there is no evidence of a traumatic disturbance to plaintiff's health following the ALJ's decision and because Dr. Tarantino describes her impairments as chronic, plaintiff reasons that the record "strongly impl[ies]" that Dr. Tarantino's opinions relate back. Id. at 16. The Commissioner, however, argues that Dr. Tarantino's opinions relate only to plaintiff's condition starting from her first appointment with him, on November 19, 2013. See Memorandum in Support of the Commissioner's Motion for Judgment on the Pleadings (Docket # 13-1) at 20-22. Dr. Tarantino provides no retrospective opinions about plaintiff's impairments during the relevant time period, the Commissioner asserts, and bases his opinions exclusively on his own examinations of her that post-date the ALJ's decision. Id. The Commissioner contends that any argument to the contrary is pure speculation: Dr. Tarantino's treatment records demonstrate, at most, a temporary exacerbation in plaintiff's health several months outside the relevant time period. Id. at 21-22 ("New evidence is not material if it tends to establish only a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." (quoting O'Connell v. Astrue, 2013 WL 1337282, at *4 (W.D.N.Y. Mar. 29, 2013))).

9

After reviewing both parties' motions and the evidence on record,
I find plaintiff's arguments unpersuasive. To start, the cases
plaintiff cites are inapposite. In Barimah, for example, the court
found that an opinion from a claimant's long-time ophthalmologist
provided thirteen days after the ALJ's decision was rendered that
corroborated the claimant's pre-decision complaints was relevant and
probative. 2004 WL 2216497, at *4-5 (E.D.N.Y. Sept. 27, 2004).
Critical to the court's analysis in Barimah was the fact that the
new evidence confirmed that the claimant's impairment in his right
eye – an impairment that the ALJ had rejected for lacking support
beyond the claimant's subjective complaints – was, in fact, not
speculative. Id. Here, Dr. Tarantino's treatment notes do not
corroborate a previously undiagnosed impairment; rather, they reflect
the status of plaintiff's health on the dates of her appointments.
Similarly, while plaintiff correctly notes that Pearl recognizes that
examinations "conducted after the ALJ's decision is rendered may still
be relevant if they clarify a pre-hearing disability and/or
diagnosis," that proposition, in context, is inapplicable here. 2009
WL 10212733, at *9 (N.D.N.Y. Sept. 3, 2009). In Pearl, the court was
considering deposition testimony from a claimant's neurologist that
clarified the unknown etiology of the claimant's pre-decision,
years-old neurological impairment – not treatment notes from a
specific, post-decision visit to a physician who remarked on the state

10

of the impairment on that day. Id. Finally, in Williams, the court
indeed found that post-decision records[3] on pre-decision conditions
were relevant, but only insofar as they contained information that
confirmed the severity of claimant's behavioral problems – problems
that the ALJ rejected for lacking supporting evidence – and included
reports indicating that these problems existed during the relevant
time period. 2014 WL 4979494, at *14-16 (S.D.N.Y. Oct. 3, 2014)
("[A]lthough [the claimant] was prescribed medication and removed
from general education after the ALJ issued his decision, the record
indicates that these efforts were under consideration during the time
period reviewed by the ALJ and the period for which benefits are
sought.").

    Here, the new evidence submitted to the Appeals Council does
not satisfy the standard for "new and material evidence" related to
the relevant time period. The evidence, which consists of Dr.
Tarantino's treatment notes and three "Physical Assessment" forms,
does not provide a probative or retrospective opinion of plaintiff's
health before the ALJ rendered his decision; it does not diagnose
or corroborate an ailment that existed before the ALJ rendered his

---

[3] In Williams, the claimant was a minor with behavioral problems. 2014
WL 4979494, at *2 (S.D.N.Y. Oct. 3, 2014). The records submitted to
the Appeals Council included, among other things, forms confirming
the claimant's misbehavior in school, psycho-educational evaluations
of the claimant, and individualized education plans outlining the
claimant's difficulties in school. Id. at *7-9.

11

decision; and it does not contain reports stating that an impairment the ALJ rejected as speculative had existed before the ALJ rendered his decision. AR at 421-52. In fact, other than to indicate that plaintiff transferred her care from her previous treating physician to him in November 2013, Dr. Tarantino makes no mention of plaintiff's condition before the ALJ rendered a decision or even that he had reviewed her previous physician's records and opinions. Id. "Because there is no reason to believe the new evidence casts light on [plaintiff's] condition during the period under review, remand to consider [the evidence submitted to the Appeals Council] is inappropriate." Collins, 960 F. Supp. 2d at 501; see also O'Connell v. Astrue, 2013 WL 1337282, at *4 (W.D.N.Y. Mar. 29, 2013) ("[N]ew evidence is not material if it tends to establish only 'a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition'" (quoting Cassera v. Sec'y of Health and Human Servs., 104 F.3d 355, 355 (2d Cir. 1996))); Pearson v. Astrue, 2012 WL 527675, at *12 (N.D.N.Y. Feb. 17, 2012) ("Evidence of a deteriorating condition is not material to the ALJ's decision if it is documented after the ALJ rendered the decision." (citing Quinlivan v. Comm'r of Soc. Sec., 2011 WL 2413491, at *8 (N.D.N.Y. 2011))); Stober v. Astrue, 2010 WL 7864971, at *17 (D. Conn. July 2, 2010) ("[T]hese records relate only to [the claimant's] condition after the ALJ's decision and are, therefore, not material or probative

of whether [the claimant] was disabled during the relevant time period."); Guile v. Barnhart, 2010 WL 2516586, at *2 (N.D.N.Y. June 14, 2010) (rejecting new evidence that "does not establish that [certain] limitations were extant during the relevant disability period," but instead "provides only a snapshot of [claimant's] condition several months after the ALJ's decision" with no retrospective opinion). Indeed, Dr. Tarantino's records reflect, at most, a continuation of treatment for a time period after the ALJ's decision. None of Dr. Tarantino's records refer to findings or tests made during the relevant time period or contain the results of new tests that implicate previous findings. The Court agrees with the Commissioner that treatment records do not qualify as material just because a claimant makes a post-decision change in treating physicians where the "new" records only corroborate a continuation of treatment for the same medical conditions already discussed and considered by the ALJ. Thus, the Appeals Council was correct in determining that the "new information" plaintiff submitted after the ALJ's decision was about a "later time" and was not relevant to "whether [plaintiff was] disabled beginning on or before September 3, 2013." AR at 2.

## Conclusion

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings (Docket # 13) is **granted**, and plaintiff's

13

motion for judgment on the pleadings (Docket # 9) is **denied**.
Plaintiff's complaint is hereby dismissed. Nothing in this Decision
and Order is meant to compromise plaintiff's right to file a new
application for disability benefits. See C.F.R. § 416.1476(b)(1).

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: June 9, 2016
Rochester, New York

14